1  Michael R. Lozeau (State Bar No. 142893)
2  Rebecca L. Davis (State Bar No. 271662)
   E-mail: michael@lozeaudrury.com
3       rebecca@lozeaudrury.com
   LOZEAU DRURY LLP
4  1939 Harrison St., Suite 150
5  Oakland, CA 94612
   Tel: (510) 836-4200
6  Fax: (510) 836-4205
7
8  Kelly Clark (State Bar No. 312251)
   LOS ANGELES WATERKEEPER
9  E-mail: kelly@lawaterkeeper.org
   LOS ANGELES WATER KEEPER
10 120 Broadway, Suite 105
   Santa Monica, CA 90401-2385
11 Tel: (310) 394-6162
12
13 Attorneys for Plaintiff
   LOS ANGELES WATERKEEPER
14
15
16          UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
17

| 18 | LOS ANGELES WATERKEEPER, a non-profit corporation, | Case No.  19-cv-07289-AB-GJS |
|---|---|---|
| 19 20 | Plaintiff, | [~~PROPOSED~~] CONSENT DECREE |
| 21 | vs. | |
| 22 23 | VULCAN MATERIALS COMPANY, a New Jersey corporation, | (Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |
| 24 | Defendant. | |
| 25 | | |

26
27
28

JS-6

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Los Angeles Waterkeeper ("Plaintiff" or "Waterkeeper") and Defendant Calmat Co., dba Vulcan Materials Company ("Defendant" or "Vulcan"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties" or "Parties."

**WHEREAS**, Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS**, Waterkeeper is dedicated to the preservation, protection, and defense of the inland and coastal surface and ground waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Vulcan is the owner and operator of a rock and asphalt facility located at 11401 West Tuxford Street in Sun Valley, California, hereinafter referred to by the Settling Parties as the "Facility";

**WHEREAS**, the Facility falls within Standard Industrial Classification ("SIC") code 1442 (Construction Sand & Gravel) and 2951 (Asphalt Paving Mixtures & Blocks);

**WHEREAS**, Waterkeeper's members live and/or recreate in and around the Los Angeles area waterbodies receiving discharges from the Facilities, including the Los Angeles River Basin;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order

97-03-DWQ and as subsequently amended by Water Quality Order No. 2014-0057-DWQ) (hereinafter the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. §§ 1251 *et seq.*;

**WHEREAS**, on April 23, 2019, Waterkeeper served Vulcan, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA (Region 9) with a notice of intent to file suit under Sections 505(a)(1) and (f) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A) ("60-Day Notice letter"), alleging violations of the Act and the Permit at the Facilities;

**WHEREAS**, on August 22, 2019, Waterkeeper filed a complaint against Vulcan in the United States District Court, Central District Court of California, entitled *Los Angeles Waterkeeper v. Vulcan Materials Company* (Case No. 2:19-cv-07289-AB-GJS); alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facilities ("Complaint") based on the 60-Day Notice letter;

**WHEREAS**, Waterkeeper contends in its 60-Day Notice letter and Complaint that, among other things, Vulcan has repeatedly discharged polluted storm water in violation of the Permit and the Clean Water Act;

**WHEREAS**, Vulcan denies all allegations set forth in the 60-Day Notice letter and Complaint relating to the Facilities;

**WHEREAS**, the Settling Parties, through their authorized representatives and

without either adjudication of Waterkeeper's claims or any admission by Vulcan of any alleged violation or other wrongdoing, believe it is in their mutual interest and choose to resolve in full Waterkeeper's allegations in the 60-Day Notice letter and Complaint through settlement and avoid the cost and uncertainties of further litigation;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations;

**WHEREAS**, the Settling Parties are entering into this Consent Decree in order to reduce or prevent pollutants associated with industrial activities from discharging via storm water to the waters of the United States;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(l)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Central District of California pursuant to Section 505(c)(l) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3. The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(l) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4. Plaintiff has standing to bring this action;

5. The Court shall retain jurisdiction over this matter for purposes of

enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.   OBJECTIVES

6.   It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.,* and to resolve those issues alleged by Waterkeeper in its Complaint.  In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Permit and all applicable provisions of the Clean Water Act at the Facilities.

## II.   COMMITMENTS OF VULCAN

7.   Vulcan shall continue to implement appropriate structural and non-structural BMPs, as required by the Permit, as described more fully below.

8.   **Maintenance of Implemented Storm Water Controls.**  Vulcan agrees that the Facility shall maintain in good working order all storm water collection and management systems currently installed or to be installed pursuant to this Consent Decree, including but not limited to, existing housekeeping measures.

9.   **Exposure Minimization BMP.**  Within 60-days of the Effective Date, Vulcan shall implement the following exposure minimization BMPs at the Facility:

> a. Vulcan shall be prohibited from storing piles of asphalt near the Facility's front gate in the areas designated as "No Stockpile" on the engineering plans, maps and calculations attached hereto as Exhibit 1 (the "Storm Water Retention System"), where it has the potential to

result in track-out and fugitive storm water discharge of asphalt through the Facility's gate.

10.   **Structural Improvements to Storm Water Management Measures.**
By no later than September 1, 2020, Vulcan shall implement the following structural BMPs to improve the storm water pollution prevention measures at the Facility:

a.   Vulcan shall install a storm water retention system at the Facility consistent with the engineering plans contained in the Storm Water Retention System.

b.   The Storm Water Retention System shall provide for sufficient retention capacity to, at a minimum, meet the "Design Storm Standards for Treatment Control BMPs" requirements for volume-based BMPs set forth in Section X.H of the General Permit. The retention capacity of the Storm Water Retention System shall be designed to retain, at a minimum, the volume of runoff produced from an 85th percentile 24-hour storm event, as determined from local, historical rainfall records.

c.   Vulcan shall implement the Storm Water Retention System including the following elements:

i.   Vulcan shall expand the existing retention basin identified as Basin 2 in accordance with the design and configuration depicted in Exhibit 1.

ii.   Vulcan shall construct and implement two additional storm water retention basins ("New Basin 3" and "New Basin 4") near the Facility's entrance on Tuxford Street between DP-1 and DP-2, as depicted in Exhibit 1.

iii.   The drainage ditch identified as the North Ditch in Exhibit 1, shall be

expanded consistent with the design specifications of Exhibit 1.

    iv.    The drainage ditch identified as the South Ditch in Exhibit 1, shall be expanded consistent with the design specifications of Exhibit 1.

    v.    Consistent with Exhibit 1, Vulcan shall construct and implement a system of trench drains, inlets, and piping that redirect storm water from DP-1 and DP-2 to either Expanded Basin 2, New Basin 3, or New Basin 4.

    vi.    To reduce both the volume of storm water and sediment flowing into Basin 2 in Drainage Area 6, Vulcan shall regrade the western segment of Drainage Area 6, such that the a portion of storm water that would have flowed to Drainage Area 6 will now flow north and be contained within Drainage Area 5, as depicted in Exhibit 1.

    d.    Within three (3) weeks of the installation of the measures describe above in paragraphs 10(c), Vulcan shall provide Waterkeeper with a written report certifying that it has completed installation and containing digital photographs of the installed measures.

    e.    To reduce sediment discharged to DP-3, within thirty (30) days of the Effective Date, Vulcan shall implement no fewer than five sediment filter socks, fiber rolls, rock bags or comparable BMPs designed to capture sediment at discharge location DP-3 in the location depicted in Exhibit 1. The BMPs shall be adequately weighted to ensure maximum contact with storm water prior to discharge.

    f.    To prevent sediment from the stockpile of material located on the

western property line, just north of the culvert from comingling with the run-on stormwater in the culvert along the western property line, within thirty (30) days of the Effective Date, Vulcan shall implement no fewer than five filter socks, fiber rolls, rock bags or similar BMPs near the southern boundary of the stockpile in the location depicted in Exhibit 1.  The BMPs shall be adequately weighted to ensure maximum contact with storm water prior to discharge.

g.     Within fourteen (14) days of the first time that the above-described BMPs are deployed, Vulcan shall email Waterkeeper digital photographs confirming the placement of said BMPs.

11.     **Amendment of SWPPP.**  Within thirty (30) days of the Effective Date, Vulcan shall amend the Facility's SWPPP to incorporate all changes, improvements, and best management practices set forth in or resulting from this Consent Decree.  A copy of the amended SWPPP shall be provided to Waterkeeper within ten (10) business days of completion.

12.     **Storm Water Sampling.**  The following storm water monitoring procedures shall be implemented at the Facility:

a. **Run-On Sampling Location RO-1.**  Vulcan shall establish an additional monitoring and sampling location ("RO-1") that is representative of the stormwater runon from the culvert that discharges stormflow into the southwest portion of the Facility. Vulcan shall monitor and sample RO-1 every time it monitors and samples DP-3 in accordance with the General Permit.  Sampling results from RO-1 shall be shared with Plaintiff for the purpose of assessing the effect, if any, of Vulcan's operations on water quality at DP-3.

b. **Sampling of DP-1, DP-2 and DP-3.** During the term of this Consent Decree, in the event that discharges occur at DP-1, DP-2 or DP-3 during scheduled facility operating hours, Vulcan shall collect samples from DP-1, DP-2 and DP-3 in accordance with the General Permit.

c. **Parameters**. Vulcan shall analyze each storm water sample taken in accordance with the General Permit and this Consent Decree for, at a minimum, for the contaminants set forth in Table 1.

d. **Reporting.** Results from the Facility's sampling and analysis during the term of this Consent Decree shall be provided to Waterkeeper within thirty (30) days of receipt of the sampling results by Vulcan or its counsel.

13. **Action Plan for NAL Exceedances.** If during the 2020-2021 or 2021-2022 Reporting Years: (1) a sample of DP-3 demonstrates an exceedance of the numeric limits listed in Table 1 and a comparison of DP-3 and RO-1 indicates the exceedance was caused by the Facility's runoff rather than offsite runon, or (2) a discharge occurs at DP-1 or DP-2 and a sample of such discharge demonstrates an exceedance of the numeric limits listed in Table 1, then Vulcan agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering implementing additional BMPs aimed at reducing levels observed in storm water samples. In furtherance of improving its storm water management practices, for any parameter that exceeds a Table 1 limit, Vulcan shall prepare and submit to Waterkeeper a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") for the Facility. In any year that an Action Plan is required, it shall be submitted by June 30 of the Reporting Year during which the exceedance(s) occurred.

**Table 1. Numeric Limitations.**

| Contaminant | Numeric Limit |
|---|---|
| Total Suspended Solids | 100 mg/L |
| pH | 6.0 – 9.0 s.u. |
| Oil and Grease | 15 mg/L |
| Nitrate + Nitrite | 0.68 mg/L |

a. **Action Plan Requirements.** Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming Reporting Year. Vulcan shall notify Waterkeeper in writing when the Action Plan has been implemented.

b. **Action Plan Review.** Waterkeeper shall have thirty (30) days upon receipt of Vulcan's Action Plan to provide Vulcan with comments. Within fourteen (14) days of receiving Waterkeeper's proposed revisions to an Action Plan, Vulcan shall consider each of Waterkeeper's recommended revisions and accept them or justify in

1   writing why any comment is not incorporated.  Action Plan(s)
2   developed and implemented pursuant to this Consent Decree are an
3   obligation of this Consent Decree. Any disputes as to the adequacy of
4   an Action Plan shall be resolved pursuant to the dispute resolution
5   provisions of this Consent Decree, set out in Section 22 below.

6   c. **Action Plan Payment.**  Vulcan shall pay five thousand dollars
7   ($5,000) each time an Action Plan is submitted to Waterkeeper.
8   Payments shall be made to "Los Angeles Waterkeeper" addressed to:
9   Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica,
10   CA 90401.  Failure to submit payment as required under this
11   paragraph will constitute a breach of the Consent Decree.

12   14.   **Provision of Documents and Reports.**  During the term of this Consent
13   Decree, Vulcan shall provide Waterkeeper with a copy of all documents submitted to
14   the Regional Board or the State Board concerning the Facility's storm water
15   discharges, including but not limited to all documents and reports submitted to the
16   Regional Board and/or State Board as required by the Permit.  Such documents and
17   reports shall be mailed to Waterkeeper contemporaneously with submission to such
18   agency.  If documents are submitted electronically to the Regional Board and/or State
19   Board, Vulcan shall e-mail those documents to Waterkeeper.

20   15.   **Site Inspections.**  Waterkeeper and its representatives may conduct up to
21   one (1) Wet Season site inspection and one (1) dry season site inspection per
22   Reporting Year at the Facility during the life of this Consent Decree. The site
23   inspections shall occur during normal business hours and Waterkeeper shall provide
24   Vulcan with twenty-four (24) hours' notice prior to each Wet Season site inspection
25   and forty-eight (48) hours' notice prior to each dry season site inspection.

26   **III.   MITIGATION PAYMENT, REIMBURSEMENT OF LITIGATION
27   FEES AND COSTS, OVERSIGHT, AND STIPULATED**

[PROPOSED] CONSENT DECREE

11

Case No. 2:19-cv-07289-AB-GJS

## PAYMENTS

16.   **Mitigation Payment.**  In recognition of the good faith efforts by Vulcan to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by Vulcan of any penalties, which have been disputed but may have been assessed in this action if it had been adjudicated adverse to Vulcan, the Settling Parties agree that Vulcan will pay the sum of thirty thousand dollars ($30,000) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects relating to water quality improvements in Los Angeles County watersheds.  Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607, Attn: Tim Little.  Payment shall be made by Vulcan to the Rose Foundation within thirty (30) calendar days of the Effective Date.  Vulcan shall copy Waterkeeper with any correspondence and a copy of the check sent to the Rose Foundation.  The Rose Foundation shall provide notice to the Settling Parties within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

17.   **Reimbursement of Fees and Costs.**  Vulcan shall reimburse Waterkeeper in the amount of sixty-five thousand and sixty five dollars ($65,065.00 ) to help defray Waterkeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to Waterkeeper's attention, and negotiating a resolution of this action in the public interest.  The payment shall be made within thirty (30) days of the Effective Date.  The payment shall be made via check, made payable to: "Lozeau Drury LLP" and mailed to Lozeau Drury LLP, c/o Rebecca Davis, 1939 Harrison Street, Suite 150, Oakland, CA 94612.

18.   **Compliance Monitoring Funds.**  As reimbursement for Waterkeeper's future fees and costs that will be incurred in order for Waterkeeper to monitor

Vulcan's compliance with this Consent Decree, Vulcan agrees to pay Waterkeeper the additional sum of five thousand dollars ($5,000) per Reporting Year payable within thirty (30) days of the effective date of the Consent Decree by check payable to "Los Angeles Waterkeeper" via certified mail, return receipt requests to Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, California 90401.

## IV.   COMMITMENT OF WATERKEEPER

19.   **Submission of Consent Decree to DOJ.**  Within three (3) business days of receiving all of the Settling Parties' signatures to this Consent Decree, Waterkeeper shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5.  The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.  If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court.  If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

## V.   WAIVER, RELEASES, AND COVENANTS NOT TO SUE

20.   In consideration of the above, and except as otherwise provided by this Consent Decree, the Parties hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any

and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have against each other arising from Waterkeeper's allegations and claims as set forth, or as could have been set forth, in the 60-Day Notice Letter and Complaint for any and all violations of the Permit or the Clean Water Act at the Facility up to and including the Termination Date of this Consent Decree.

21.   **No Admission.**  The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Nothing in this Consent Decree shall be construed as, and Vulcan expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by Vulcan of any fact, finding, conclusion, issue of law, or violation of law.  However, this Paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

## VI.   BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

22.   **Informal Dispute Resolution**.  The Settling Parties will engage in "Informal Dispute Resolution" pursuant to the terms of this paragraph:

        a. If a dispute under this Agreement arises, including whether any Settling Party believes that a violation of the Agreement and the Court's dismissal order has occurred, the Settling Parties will meet and confer (telephonically or in-person) within twenty-one (21) days of receiving written notification of a request for such meeting.  During the meet and confer proceeding, the Settling Parties will discuss the dispute and make reasonable efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute.  The Settling Parties may, upon mutual written agreement, extend the time

1    to conduct the meet and confer discussions beyond twenty-one (21)

2    days.  If meet and confer discussions fail to resolve the dispute, the

3    Settling Parties shall request a magistrate judge of this court to

4    conduct a single mediation session pursuant to such procedures as the

5    magistrate judge may require.  The mediation is to be held within 45

6    days of the conclusion of the meet and confer discussions, or as soon

7    thereafter as the schedule of the magistrate judge will permit.

8      b. If any Settling Party fails to meet and confer or mediate within the

9        timeframes set forth in paragraph (a) directly above, or the meet and

10       confer and mediation do not resolve the dispute, after at least twenty-

11       one (21) days have passed after the meet and confer or mediation

12       occurred or should have occurred, either Settling Party may initiate

13       the "Formal Dispute Resolution" procedures outlined directly below.

14      23.   **Formal Dispute Resolution.**  In any action or proceeding which is

15   brought by any Settling Party against any other Settling Party pertaining to, arising out

16   of, or related to the requirements of the Court's dismissal order and this Agreement,

17   the Settling Parties will first utilize the "Informal Dispute Resolution" proceedings set

18   forth in the preceding paragraph and, if not successful, the Settling Parties will utilize

19   the "Formal Dispute Resolution" procedures in this paragraph. "Formal Dispute

20   Resolution" will be initiated by filing a Motion to Show Cause or other appropriately

21   titled motion ("Motion") in the United States District Court, Central District of

22   California, to determine whether either party is in violation of the Agreement and the

23   Court's dismissal order and, if so, to require the violating party to remedy any

24   violation identified by the District Court within a reasonable time frame.  Litigation

25   costs and fees incurred in the Formal Dispute Resolution process will be awarded in

26   accord with the standard established by Section 505 of the Clean Water Act,

27

28

33 U.S.C. § 1365

## VII.  MISCELLANEOUS PROVISIONS

24.    **Effective Date.**  The Effective Date of this Consent Decree shall be upon the subsequent entry of the Consent Decree by the Court.

25.    **Term of Consent Decree.**  This Consent Decree shall terminate September 1, 2022, provided there are no pending dispute resolution proceedings initiated under paragraphs 23-24 and Defendant has completed all payments and affirmative duties required by the Consent Decree.  If on September 1, 2022, any dispute resolution proceedings are pending or Defendant has failed to complete all payments and affirmative duties required by the Consent Decree, then the term of the Consent Decree shall be extended through completion of any such proceedings or obligations.

26.    **Force Majeure.**  Vulcan's performance of the requirements in Section II of this Consent Decree shall be extended or modified in the case of a force majeure event, as follows:

 a. A "force majeure event" is any event beyond the control of the Vulcan that prevents or delays the performance of any requirement in Section II of this Consent Decree despite Vulcan's best efforts to fulfill the requirement. A force majeure event does not include a financial inability to perform a requirement.  A force majeure event includes governmental orders or restrictions relating to COVID-19 and similar public-health threats.

 b. Vulcan shall provide notice to Waterkeeper orally or by electronic transmission no later than ten (10) days after the time that Vulcan first knew of, or by the exercise of due diligence, should have known of, a force majeure event. The notice shall state the anticipated

16

duration of any delay, its cause(s), and propose an alternative schedule for performing the affected requirement(s).

c. If Waterkeeper agrees that a force majeure event has occurred, Waterkeeper shall agree to extend the time for Vulcan to perform the affected requirement(s) for the time necessary to complete those obligations.

d. If Waterkeeper does not agree that a force majeure event has occurred or does not agree to the extension of time sought by Vulcan, the parties may invoke the Dispute Resolution Procedures in Section VI of this Consent Decree.

27.   **Execution in Counterparts.**  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

28.   **Facsimile Signatures.**  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

29.   **Construction.**  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

30.   **Authority to Sign.**  The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

31.   **Integrated Consent Decree.**  All Consent Decrees, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

32.   **Severability.**  In the event that any of the provisions of this Consent

Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

33. **Choice of Law.** This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

34. **Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

35. **Negotiated Consent Decree.** The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

36. **Modification of the Consent Decree.** This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

37. **Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

38. **Mailing of Documents to Waterkeeper/Notices/Correspondence.** Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Waterkeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

> Los Angeles Waterkeeper
> Attention: Kelly Clark

[PROPOSED] CONSENT DECREE

Case No. 2:19-cv-07289-AB-GJS

120 Broadway, Suite 105
Santa Monica, CA 90401
E-mail: kelly@lawaterkeeper.org

With copies sent to:

Rebecca Davis
Lozeau Drury LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
E-mail: rebecca@lozeaudrury.com

Unless requested otherwise by Vulcan, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Vulcan pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

Mark Reardon
Vice President and Assistant General Counsel
Vulcan Materials Company
2526 E. University Drive
Phoenix, AZ 85034
E-mail: reardonm@vmcmail.com

With copies sent to:

Sean Hungerford
HARRISON, TEMBLADOR
HUNGERFORD & JOHNSON LLP
2801 T Street
Sacramento, CA 95816
E-mail: shungerford@hthjlaw.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an

1  overnight mail/delivery service.  Any changes of address or addressees shall be
2  communicated in the manner described above for giving notices.
3         39.    The settling Parties hereto enter into this Consent Decree, Order and
4  Final Judgment and submit it to the Court for its approval and entry as a final
5  judgment.
6
7  Date: _____April 15_____, 2020        LOS ANGELES WATERKEEPER
8
9                                        _____
10                                       Bruce Reznik
                                         Executive Director, Los Angeles Waterkeeper
11 Date: _____April 16_____, 2020        VULCAN MATERIALS COMPANY
12
13                                       _____
                                         Name:  Mark Reardon
14                                       Title:   Vice President
15 Approved as to form:
16
17 Date: _____April 16_____, 2020        LOZEAU DRURY LLP
18
19                                       _____
                                         Rebecca L. Davis
20                                       Attorneys for Los Angeles Waterkeeper
21 Date: _____April 16_____, 2020        HARRISON, TEMBLADOR
                                         HUNGERFORD & JOHNSON LLP
22
23
24                                       _____
                                         Sean Hungerford
25                                       Attorney for Vulcan Materials Company
26
27
28 **IT IS SO ORDERED.**

[PROPOSED] CONSENT DECREE                              Case No. 2:19-cv-07289-AB-GJS

1
2    Date: _____June 16_____, 2020
3
4                               Honorable André Birotte Jr.
5                               United States District Court Judge
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1







OVERFLOW
OUTLET

SUMP STRUCTURE
FOR PUMP

0.5' FREEBOARD
DEPTH

5.5' RUNOFF
DETENTION
DEPTH

1
2.5

2.5
1

2' SEDIMENT
STORAGE
DEPTH

ENLARGED BASIN 2
CONCEPTUAL CROSS-SECTION

NOTES:
NOT TO SCALE FOR ILLUSTRATION
PURPOSES. AS-BUILT DIMENSIONS MAY
VARY, WHILE STILL ACH EV NG REQUIRED
STORAGE CAPACITY.

REQUIRED STORAGE CAPACITY IS 85TH
PERCENT LE 24-HOUR STORM EVENT
RUNOFF VOLUME = 1.15 AC-FT.

UNLINED ENLARGED BASIN 2 CONCEPT IS
PRESENTED.

PUMP SUMP STRUCTURE WALLS ARE
SOLID.  STRUCTURE HAS A GRATE INLET ON
TOP.

MAINTENANCE EQUIPMENT RAMP NOT
SHOWN.

DITCH WIDTH
8' - NORTH DITCH
5' - SOUTH DITCH

EXISTING
PAVEMENT

FLOW DEPTH
3.25" - NORTH DITCH
2" - SOUTH DITCH

8" THICK
CONCRETE DITCH

ENLARGED CONCRETE DITCH
CONCEPTUAL CROSS-SECTION

NOTES:
NOT TO SCALE FOR ILLUSTRATION
PURPOSES.

CONCEPT FOR ENLARGED NORTH
AND SOUTH CONCRETE DITCHES IS
PRESENTED.

REQU RED FLOW CAPACITY IS TWO
TIMES 85TH PERCENTILE STORM
EVENT PEAK FLOWRATE.
NORTH DITCH = 2.6 CFS.
SOUTH DITCH = 0.6 CFS.

| VULCAN SUN VALLEY 11401 W. TUXFORD STREET SUN VALLEY, CALIFORNIA 91352 | | |
|---|---|---|
| ENLARGED BASIN 2 AND DITCHES CONCEPTUAL CROSS-SECTIONS | | |
| November 2019 | Rev **1.0** | Figure No. |
| Project No.    117.00984.00010 | | **3** |

SLR
SLR Consulting USA Pty Ltd

N:\Vvine\CAD\Vulcan  Material\s\Sun  Valley\SV  PLANT_Concepts  Map_Basins.dwg





## TABLE 1 – ENLARGED BASIN 2

| Basin Design Component | Result |
|---|---|
| Basin Total Depth | 8.0 ft |
| Sediment Allowance Storage Depth | 2.0 ft |
| Water Storage Depth | 5.5 ft |
| Basin Freeboard Depth | 0.5 ft |
| Top Width | 85 ft |
| Top Length | 150 ft |
| Basin Side Slope (Horizontal : Vertical) | 2.5:1 |
| Sediment Allowance Storage Volume | 0.26 ac-ft |
| Water Storage Volume | 1.17 ac-ft |
| Total Basin Volume | 1.57 ac-ft |

Minimum water storage capacity is the 85th percentile 24-hour storm runoff volume = 1.15 ac-ft.

# Peak Flow Hydrologic Analysis

File location: N:/Irvine/Projects/Vulcan Materials/Sun Valley/117.00984.00010_2019/Task 0001 - Eval of Options/HydroCalc/Proposed Option/Vulcan Su...
Version: HydroCalc 1.0.3

## Input Parameters

| | |
|---|---|
| Project Name | Vulcan Sun Valley |
| Subarea ID | Enlarged Basin 2 |
| Area (ac) | 15.8 |
| Flow Path Length (ft) | 1505.0 |
| Flow Path Slope (vft/hft) | 0.011 |
| 85th Percentile Rainfall Depth (in) | 1.1 |
| Percent Impervious | 0.88 |
| Soil Type | 15 |
| Design Storm Frequency | 85th percentile storm |
| Fire Factor | 0 |
| LID | True |

## Output Results

| | |
|---|---|
| Modeled (85th percentile storm) Rainfall Depth (in) | 1.1 |
| Peak Intensity (in/hr) | 0.2289 |
| Undeveloped Runoff Coefficient (Cu) | 0.1 |
| Developed Runoff Coefficient (Cd) | 0.804 |
| Time of Concentration (min) | 47.0 |
| Clear Peak Flow Rate (cfs) | 2.9083 |
| Burned Peak Flow Rate (cfs) | 2.9083 |
| 24-Hr Clear Runoff Volume (ac-ft) | 1.1549 |
| 24-Hr Clear Runoff Volume (cu-ft) | 50306.1055 |





## TABLE 2 – NEW BASIN 3

| Basin Design Component | Result |
|---|---|
| Basin Total Depth | 7.0 ft |
| Sediment Allowance Storage Depth | 2.0 ft |
| Water Storage Depth | 4.5 ft |
| Basin Freeboard Depth | 0.5 ft |
| Top Width | 45 ft |
| Top Length | 80 ft |
| Basin Side Slope (Horizontal : Vertical) | 2.5:1 |
| Sediment Allowance Storage Volume | 0.03 ac-ft |
| Water Storage Volume | 0.22 ac-ft |
| Total Basin Volume | 0.29 ac-ft |

Minimum water storage capacity is the 85th percentile 24-hour storm runoff volume = 0.21 ac-ft.

# Peak Flow Hydrologic Analysis

File location: N:/Irvine/Projects/Vulcan Materials/Sun Valley/117.00984.00010_2019/Task 0001 - Eval of Options/HydroCalc/Proposed Option/Vulcan Sun
Version: HydroCalc 1.0.3

## Input Parameters

| | |
|---|---|
| Project Name | Vulcan Sun Valley |
| Subarea ID | New Basin 3 |
| Area (ac) | 2.6 |
| Flow Path Length (ft) | 800.0 |
| Flow Path Slope (vft/hft) | 0.01 |
| 85th Percentile Rainfall Depth (in) | 1.1 |
| Percent Impervious | 0.96 |
| Soil Type | 15 |
| Design Storm Frequency | 85th percentile storm |
| Fire Factor | 0 |
| LID | True |

## Output Results

| | |
|---|---|
| Modeled (85th percentile storm) Rainfall Depth (in) | 1.1 |
| Peak Intensity (in/hr) | 0.2827 |
| Undeveloped Runoff Coefficient (Cu) | 0.1 |
| Developed Runoff Coefficient (Cd) | 0.868 |
| Time of Concentration (min) | 30.0 |
| Clear Peak Flow Rate (cfs) | 0.6381 |
| Burned Peak Flow Rate (cfs) | 0.6381 |
| 24-Hr Clear Runoff Volume (ac-ft) | 0.2052 |
| 24-Hr Clear Runoff Volume (cu-ft) | 8937.0306 |





## TABLE 3 – NEW BASIN 4

| Basin Design Component | Result |
|---|---|
| Basin Total Depth | 6.0 ft |
| Sediment Allowance Storage Depth | 2.0 ft |
| Water Storage Depth | 3.5 ft |
| Basin Freeboard Depth | 0.5 ft |
| Top Width | 45 ft |
| Top Length | 35 ft |
| Basin Side Slope (Horizontal : Vertical) | 2.5:1 |
| Sediment Allowance Storage Volume | 0.01 ac-ft |
| Water Storage Volume | 0.07 ac-ft |
| Total Basin Volume | 0.09 ac-ft |

Minimum water storage capacity is the 85th percentile 24-hour storm runoff volume = 0.04 ac-ft.

## Peak Flow Hydrologic Analysis

File location: N:/Irvine/Projects/Vulcan Materials/Sun Valley/117.00984.00010_2019/Task 0001 - Eval of Options/HydroCalc/Proposed Option/Vulcan Sun
Version: HydroCalc 1.0.3

### Input Parameters

| | |
|---|---|
| Project Name | Vulcan Sun Valley |
| Subarea ID | New Basin 4 |
| Area (ac) | 0.5 |
| Flow Path Length (ft) | 195.0 |
| Flow Path Slope (vft/hft) | 0.025 |
| 85th Percentile Rainfall Depth (in) | 1.1 |
| Percent Impervious | 0.96 |
| Soil Type | 15 |
| Design Storm Frequency | 85th percentile storm |
| Fire Factor | 0 |
| LID | True |

### Output Results

| | |
|---|---|
| Modeled (85th percentile storm) Rainfall Depth (in) | 1.1 |
| Peak Intensity (in/hr) | 0.4738 |
| Undeveloped Runoff Coefficient (Cu) | 0.1 |
| Developed Runoff Coefficient (Cd) | 0.868 |
| Time of Concentration (min) | 10.0 |
| Clear Peak Flow Rate (cfs) | 0.2056 |
| Burned Peak Flow Rate (cfs) | 0.2056 |
| 24-Hr Clear Runoff Volume (ac-ft) | 0.0395 |
| 24-Hr Clear Runoff Volume (cu-ft) | 1718.6422 |





**TABLE 4 – ENLARGED CONCRETE DITCHES**

| Ditch | Minimum Required Flowrate Capacity (cfs) | Ditch Longitudinal Slope | Ditch Flow Depth (in) | Ditch Width (ft) | Flow Velocity (ft/s) | Ditch Flowrate Capacity (cfs) |
|---|---|---|---|---|---|---|
| North Ditch | 2.6 | 1% | 3.25 | 8.0 | 2.6 | 2.8 |
| South Ditch | 0.6 | 1% | 2.0 | 5.0 | 1.9 | 0.8 |

Manning's roughness coefficient, n = 0.015 for concrete lined float finished ditch.

Minimum required flowrate capacity is two times the 85th percentile storm runoff peak flowrate.

# Peak Flow Hydrologic Analysis

File location: N:/Irvine/Projects/Vulcan Materials/Sun Valley/117.00984.00010_2019/Task 0001 - Eval of Options/HydroCalc/Proposed Option/Vulcan Su
Version: HydroCalc 1.0.3

## Input Parameters

| | |
|---|---|
| Project Name | Vulcan Sun Valley |
| Subarea ID | North Ditch |
| Area (ac) | 6.2 |
| Flow Path Length (ft) | 1370.0 |
| Flow Path Slope (vft/hft) | 0.009 |
| 85th Percentile Rainfall Depth (in) | 1.1 |
| Percent Impervious | 0.96 |
| Soil Type | 15 |
| Design Storm Frequency | 85th percentile storm |
| Fire Factor | 0 |
| LID | True |

## Output Results

| | |
|---|---|
| Modeled (85th percentile storm) Rainfall Depth (in) | 1.1 |
| Peak Intensity (in/hr) | 0.2362 |
| Undeveloped Runoff Coefficient (Cu) | 0.1 |
| Developed Runoff Coefficient (Cd) | 0.868 |
| Time of Concentration (min) | 44.0 |
| Clear Peak Flow Rate (cfs) | 1.2709 |
| Burned Peak Flow Rate (cfs) | 1.2709 |
| 24-Hr Clear Runoff Volume (ac-ft) | 0.4892 |
| 24-Hr Clear Runoff Volume (cu-ft) | 21311.6672 |



# Peak Flow Hydrologic Analysis

File location: N:/Irvine/Projects/Vulcan Materials/Sun Valley/117.00984.00010_2019/Task 0001 - Eval of Options/HydroCalc/Proposed Option/Vulcan Sun
Version: HydroCalc 1.0.3

## Input Parameters

| | |
|---|---|
| Project Name | Vulcan Sun Valley |
| Subarea ID | South Ditch |
| Area (ac) | 1.1 |
| Flow Path Length (ft) | 435.0 |
| Flow Path Slope (vft/hft) | 0.014 |
| 85th Percentile Rainfall Depth (in) | 1.1 |
| Percent Impervious | 0.96 |
| Soil Type | 15 |
| Design Storm Frequency | 85th percentile storm |
| Fire Factor | 0 |
| LID | True |

## Output Results

| | |
|---|---|
| Modeled (85th percentile storm) Rainfall Depth (in) | 1.1 |
| Peak Intensity (in/hr) | 0.3504 |
| Undeveloped Runoff Coefficient (Cu) | 0.1 |
| Developed Runoff Coefficient (Cd) | 0.868 |
| Time of Concentration (min) | 19.0 |
| Clear Peak Flow Rate (cfs) | 0.3346 |
| Burned Peak Flow Rate (cfs) | 0.3346 |
| 24-Hr Clear Runoff Volume (ac-ft) | 0.0868 |
| 24-Hr Clear Runoff Volume (cu-ft) | 3781.0253 |



## Peak Flow Hydrologic Analysis

File location: N:/Irvine/Projects/Vulcan Materials/Sun Valley/117.00984.00010_2019/Task 0001 - Eval of Options/HydroCalc/Proposed Option/Vulcan Sun
Version: HydroCalc 1.0.3

### Input Parameters

| | |
|---|---|
| Project Name | Vulcan Sun Valley |
| Subarea ID | DP-3 Vulcan |
| Area (ac) | 1.9 |
| Flow Path Length (ft) | 640.0 |
| Flow Path Slope (vft/hft) | 0.015 |
| 85th Percentile Rainfall Depth (in) | 1.1 |
| Percent Impervious | 0.57 |
| Soil Type | 15 |
| Design Storm Frequency | 85th percentile storm |
| Fire Factor | 0 |
| LID | True |

### Output Results

| | |
|---|---|
| Modeled (85th percentile storm) Rainfall Depth (in) | 1.1 |
| Peak Intensity (in/hr) | 0.2703 |
| Undeveloped Runoff Coefficient (Cu) | 0.1 |
| Developed Runoff Coefficient (Cd) | 0.556 |
| Time of Concentration (min) | 33.0 |
| Clear Peak Flow Rate (cfs) | 0.2856 |
| Burned Peak Flow Rate (cfs) | 0.2856 |
| 24-Hr Clear Runoff Volume (ac-ft) | 0.096 |
| 24-Hr Clear Runoff Volume (cu-ft) | 4183.4022 |



Gabion Check Dam: Examples

https://gabionsupply.com/check-dams/



